**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **AUDREY A. JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 05-0458-WS-C** |
| | ) |
| **GUARDSMARK, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment.  (Doc. 16).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 17, 19, 20), and the motion is ripe for resolution.  After carefully considering these materials and other relevant portions of the file, the Court concludes that the motion for summary judgment is due to be granted.

## BACKGROUND

The plaintiff was hired as a security officer on or about October 20, 2003 and assigned to the defendant's site in Linden, Alabama.  She alleges that, beginning in December 2003, she was sexually harassed by her supervisor, Danny Orr.  She alleges that she complained to management several times in January 2004 and that the defendant responded slowly, reluctantly and ineffectively.  The plaintiff has been on leave due to an on-the-job injury since on or about March 9, 2004.

The complaint identifies four causes of action: (1) sexual harassment in violation of Title VII; (2) invasion of privacy; (3) negligent and/or wanton retention; and (4) negligent and/or wanton supervision and training.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. § 2000e-5(f)(3).  Venue is proper in this Court pursuant to 28 U.S.C. §

1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11ᵗʰ Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11ᵗʰ Cir. 1995). The Court therefore confines its consideration to those arguments the parties have elected to assert expressly.

## I. Sexual Harassment.

"To prove sexual harassment under Title VII, a plaintiff must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11ᵗʰ Cir. 2004). The defendant challenges only the plaintiff's ability to prove the fourth element. (Doc. 16 at 1, ¶ 3; Doc. 17 at 5-8; Doc. 20 at 1-3).

The fourth element of the plaintiff's prima facie case contains both an objective and a subjective element. *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11ᵗʰ Cir. 1999)(en banc). "'[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)). The objective test "is somewhat fact intensive." *Id.* However, the Supreme Court has identified, and the Eleventh Circuit has

routinely employed, a four-factor analysis: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*. The Court is required to "examine the conduct in context, not as isolated acts, and [to consider] the totality of the circumstances." *Id*.

There is evidence of the following incidents involving the plaintiff and Orr, all occurring between early December 2003 and late January 2004:

- Comments to the plaintiff about male employees at the work site and their availability, such as "you need to check that out," "he'd make a good catch," "he makes good wages," and "that one there's going through a divorce," occurring approximately daily through December and January, (Plaintiff's Declaration, ¶ 4);

- Placing condoms in a pair of gloves in the plaintiff's locker and laughing at the plaintiff when she found them, occurring once on December 22, 2003, (*id.*, ¶ 5);

- Telling the plaintiff that he didn't understand why the condoms were scented, (*id.*), occurring twice, (Doc. 19 at 15);

- Telling male truck drivers about "her condoms" and implying that the plaintiff brought them to work, (Plaintiff's Declaration, ¶ 5), occurring twice, (Doc. 19 at 15);

- Telling sexually explicit and offensive jokes in the presence of the plaintiff and male workers, and smirking or laughing at her when he came to the punch line, occurring about seven times "during [her] employment" and beginning on or about December 22, 2003, (Plaintiff's Declaration, ¶ 6);

- Making sexual remarks to the plaintiff about a female employee, including that he had a nude picture of her and that she was a centerfold, occurring on January 20, 2004, (*id.*, ¶ 7), a total of two statements, (Doc. 19 at 15);

- Making sexual remarks to the plaintiff about another female employee's breast reduction surgery, including that he didn't understood why a woman would do that and that she had looked better before, (Plaintiff's Declaration, ¶ 8), a total of four statements in late January 2004. (*Id.*; Doc. 19 at 15).

In addition, the plaintiff alleges that, after she complained of sexual harassment in

January 2004, for the remaining six weeks of her active employment Orr altered her job duties and attempted to isolate her and make her job more difficult.  (Plaintiff's Declaration, ¶ 20; Doc. 19 at 15-16).  The Court considers these incidents in turn before considering the "totality of the circumstances."

### A.  Identifying Dating Prospects.

Having occurred almost daily for about two months, this conduct ranks high on the frequency scale.  However, a supervisor's mere asking out of his subordinate, without more, is not considered severe, humiliating or threatening.  *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 578, 585 (11th Cir. 2000)(that the plaintiff's supervisor persistently asked the plaintiff to lunch was not "severe, threatening, or humiliating," and "we cannot mandate that an employer be required to ensure that supervisors never ... ask [subordinates] to lunch."); *see also Weiss v. Coca-Cola Bottling Co.,*990 F.2d 333, 337 (7th Cir. 1993) (supervisor's asking subordinate plaintiff for dates, along with physical touching and "dumb blonde" remarks, did not support a sexual harassment claim), *discussed with approval in Mendoza v. Borden,* 195 F.3d at 1247.  If asking out a subordinate is not severe, humiliating or threatening, surely identifying individuals a subordinate could date cannot be.

### B.  Condom Incident and Remarks.

This crude gesture certainly contributes to a hostile work environment, but it does not of itself establish one.  As to frequency, the conduct occurred only once, and the four comments Orr made about the incident were confined to the day of the incident.  Although boorish, the conduct and statements are not particularly severe and, while the plaintiff professes subjective feelings of humiliation, (Plaintiff's Declaration, ¶ 5), the incident and its aftermath are objectively more embarrassing than humiliating.  *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)("the sporadic use of abusive language, gender-related jokes, and occasional teasing" cannot support a hostile work environment claim); *Miller v. Lectra USA, Inc*., 145 Fed. Appx. 315, 317 (11th Cir. 2005) (conduct, including taking the plaintiff to purchase condoms for the harasser's contemplated "love-fest" weekend, did not support a sexual harassment claim).

-4-

**C.  Sexual Jokes.**

The usage of sexual jokes can certainly contribute to a hostile work environment.[1]  The difficulty is that, as to six of the seven jokes told,  the plaintiff has offered no evidence as to their content, so that they cannot be relied on in determining the existence of an objectively abusive environment.[2]

At any rate, "[m]ere 'sex talk,' without more, does not rise to the level of objectively severe and pervasive harassment."  *Howard v. City of Robertsdale*, 168 Fed. Appx. 883, 889-90 (11th Cir. 2006)(citing as examples cases in which sexual jokes were directed towards the plaintiff); *Mendoza v. Borden*, 195 F.3d at 1246-47 (citing cases in which repeated sexual jokes and other conduct did not support a sexual harassment claim).  Seven sexual jokes over a period of two  months, even if all could be assumed to be as racy as Orr's rattlesnake joke, would not significantly advance the plaintiff's case.

**D.  Comments About Female Employees.**

---

[1]*See, e.g., Dees v. Johnson Controls World Services, Inc*., 168 F.3d 417, 418-19 (11th Cir. 1999)(in addition to physical harassment and sexual propositions, the defendant's employees frequently told "sexually explicit stories and jokes"); *Cross v. State of Alabama*, 49 F.3d at 1496, 1499 (in addition to numerous specific incidents of verbal and physical threats and humiliation, the alleged harasser "told sexual and dirty jokes" and "made derogatory jokes about women as a class").  Sexual jokes alone, however, can rarely if ever carry the plaintiff's burden.  *See Farragher v. City of Boca Raton*, 524 U.S. at 788 (Title VII does not protect against "the ordinary tribulations of the workplace, such as ... gender-related jokes").

[2]*See, e.g., Koelsch v. Beltone Electronics Corp*., 46 F.3d 705, 708 (7th Cir. 1995); *Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1236 n.16 (M.D. Ala. 1999); *Wemimo v. Personal Marketing Co.*, 1998 WL 709605 at *4 n.8 (D. Kan. 1998); *cf. Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996)(applying the principle to a race claim); *Alexander v. CIT Technology Financing Services, Inc.*, 217 F. Supp. 2d 867, 876 n.3 (N.D. Ill. 2002) (applying the principle to an age claim).

In *Cross* and *Dees*, the Eleventh Circuit noted the existence of sexual jokes in assessing the existence of an objectively hostile work environment, without identifying the content of the jokes.  Because the Court's opinions are unclear, it may be that the trial court records in fact reflected the content of the jokes.  Even if they did not, the evidence of a hostile work environment was so strong in both cases that the result would have been the same with or without the jokes.  *Cross* and *Dees* thus do not suggest that conclusory testimony that unidentified "dirty jokes" were told can add significant weight to a claim of sexual harassment.

These six comments, made within a short period in late January 2004, fall within the category of "mere sex talk."  Thus, even "frequent remarks ... made about female employees' bodies and sex lives[,] standing alone, do not rise to the level of discrimination under Title VII." *Howard v. City of Robertsdale*, 168 Fed. Appx. at 889.

### E.  Retaliation for Sexual Harassment Complaint.

"[T]he statements or conduct must be of a sexual or gender-related nature — sexual advances, requests for sexual favors, [or] conduct of a sexual nature, [citation omitted] — before they are considered in determining whether the severe or pervasive requirement is met."  *Gupta v. Florida Board of Regents*, 212 F.3d at 583 (internal quotes omitted).  By the plaintiff's own admission, this conduct was not "based on her sex" but on her complaint of sexual harassment. Whether or not this assertion would support a claim of retaliation,[3] it cannot be used to bolster a claim of sexual harassment.

### F.  The Totality of the Circumstances.

In summary, the plaintiff points to the following over a two-month period: one incident involving condoms and four comments about it; one joke about rattlesnakes and virility; six jokes of unknown and therefore unhelpful content; six comments about female workers' anatomy; and almost daily suggestions of dating prospects.  As noted, all of these incidents rank at or near the low end of the scale for severity and humiliation, and all but the innocuous suggestions of dating prospects are of limited frequency.  Not surprisingly, the plaintiff can identify no opinion authorizing a case dependent on such a paucity of circumstances to proceed to trial.[4]

Instead, the plaintiff insists that she can cast all on the fourth factor, and she offers her

---

[3]Although the plaintiff's EEOC charge includes such a claim, (Doc. 19, Exhibit 2), her complaint does not.

[4]Each of the cases which she cites as comparable involved repeated incidents of improper touching and groping as well as requests for sexual favors.  (Doc. 19 at 19).  Their fact patterns could not be further from that of this case.

declaration that the situation in fact made it more difficult for her to do her job.  (Doc. 19 at 18).
There are several problems with this argument.  First, the plaintiff attributes her difficulty in part
to the "disruption of having to repeatedly complain to management about the harassment," (*id*.),
rather than to the harassment itself as the proper analysis requires.  Second, this factor "involves
both a subjective and an objective inquiry," *Gupta v. Board of Regents*, 212 F.3d at 586, and, as
in *Gupta*, "the conduct and statements in question would not have interfered with a reasonable
employee's performance of her job."  *Id*.

Finally, the plaintiff correctly notes that the Eleventh Circuit has not ruled out the use of
other factors to measure the fourth element of a sexual harassment case,[5] and she offers some of
her own invention: (1) that Orr's conduct was "widespread and common"; (2) that he is a
"management employee"; (3) the "lack of a thorough investigation" into her complaints; and (4)
the "lack of any disciplinary action" against Orr until late in the game.  (Doc. 19 at 19).  The
trouble is that these factors do not advance her case.  Whether Orr's conduct was widespread and
common has already been addressed in considering the frequency of his conduct.  That he is her
supervisor has already been considered in gauging the severity of his conduct.[6]  And the
response of management to Orr's alleged sexual harassment is not relevant to whether Orr's
conduct constitutes sexual harassment to begin with.

In short, the plaintiff cannot present a jury issue as to whether the alleged harassment
"was sufficiently severe or pervasive to alter the terms and conditions of employment and create
a discriminatorily abusive working environment."  Accordingly, the defendant is entitled to
summary judgment as to this claim.

## II.  Invasion of Privacy.

Invasion of privacy "consists of four distinct wrongs: 1) the intrusion upon the plaintiff's
physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the
plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the

---

[5]*E.g., Miller v. Kenworth, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

[6]*See, e.g., Gupta v. Board of Regents*, 212 F.3d at 582 (specifying that the four factors
employed herein apply equally when the alleged harasser is a supervisor of the plaintiff).

appropriation of some element of the plaintiff's personality for a commercial use." *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003)(internal quotes omitted).  The plaintiff confines her cause of action to the first prong.  (Doc. 19 at 27).

"The invasion may be physical intrusion into a place in which the plaintiff has secluded himself," or "use of the defendant's senses ... to oversee or overhear the plaintiff's private affairs," or "some other form of investigation or examination into his private concerns." *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 710-11 (Ala. 1983)(internal quotes omitted).  The plaintiff alleges no physical intrusion and no spying.  She is thus left to identify "some other form of investigation or examination into [her] private concerns."[7]

Neither Orr's jokes nor his comments about other female employees constituted an investigation or examination into the plaintiff's private concerns, and these episodes are thus irrelevant to her claim for invasion of privacy.  Likewise, while Orr's pointing out of potential dating partners for the plaintiff may reflect an interest in her affairs, it does not represent a probing for private information about her.

This leaves only the condom incident and Orr's comments about it.  In order to secret the condoms in the plaintiff's work gloves, Orr had to place at least his hand inside her locker.  While it is perhaps possible that this conduct could constitute a physical intrusion on the plaintiff's solitude despite her absence at the time, such a conclusion would require evidence that the plaintiff had a reasonable expectation that her locker would not be visited by others, and the plaintiff offers no such evidence.  Likewise, while it might constitute an examination into the plaintiff's private affairs for Orr to rummage through her locker, the plaintiff presents no evidence that he did so.  The prank itself was not an investigation into the plaintiff's private affairs.  Orr's comments to the plaintiff and others about the condom incident might be relevant to a "false light" invasion of privacy claim had the plaintiff asserted one, but they do not reflect an examination into her private concerns.

---

[7]*Accord Gary v. Crouch*, 867 So. 2d at 318 ("Lt. Gary has made no showing that Chief Crouch has intruded on her seclusion, because she has made no showing that he sought or obtained any private information about her, or that he intruded upon her 'physical solitude or seclusion' by seeking any information that he did not properly have access to through his role as her supervisor in the police department.").

Thus, the only even potentially actionable conduct the plaintiff has identified is one incident in which Orr placed his hand in her locker in order to deposit condoms.  This is simply too mild an episode on which to peg a "wrongful intrusion" invasion of privacy claim.  *Cf.  Lee v. Longhorn Steaks, Inc*., 662 So. 2d 672, 674, 675-76 (Ala. 1995)(employee's "horseplay" of dragging the plaintiff around using a head lock or choke hold was inadequate as a matter of law to support a claim for invasion of privacy).  Indeed, the plaintiff's claim would fail even if the Court could consider the entirety of Orr's conduct.  *See, e.g., McIsaac v. WZEW-FM Corp*., 495 So. 2d 649, 650, 652 (Ala. 1986)(owner's requests to the plaintiff to have an affair, offers of dinner and travel, attempt to kiss her, putting his arm around her, touching her arm and giving her suggestive smirks and smiles were inadequate as a matter of law to support a claim for invasion of privacy).[8]

### III. Negligent/Wanton Employment Claims.

"We note that a party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents."  *University Federal Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003).  The plaintiff does not dispute this principle or its applicability to claims of wrongful training and retention.  (Doc. 19 at 28-30).  Because there is no genuine issue of material fact as to whether Orr sexually harassed the plaintiff or invaded her privacy, there necessarily is no genuine issue of material fact as to whether the defendant negligent or wantonly supervised, trained or retained Orr.

### CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**.

DONE and ORDERED this 31st day of August, 2006.

---

[8]It is telling that the only cases the plaintiff can muster to show conduct actionable under the "wrongful intrusion" prong involve egregious sexual harassment, including physical touching, propositions, and inquiries into the plaintiff's sexual preferences.  (Doc. 19 at 27 & n.16).

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE